IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMEL VALENTINO WHITE,<br><br>                    Petitioner,<br><br>          vs.<br><br>RICH SUBIA,[1] Warden, Mule Creek State Prison,<br><br>                    Respondent. | No. 2:06-cv-02840-JKS-EFB<br><br>ORDER |

      Petitioner Romel Valentino White, a state prisoner appearing through counsel, has filed this application for a writ of habeas corpus under 28 U.S.C. § 2254.  The matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

      On February 19, 2008, the Magistrate Judge filed Findings and Recommendations, which were served on all parties and which contained notice to all parties that any objections to the Findings and Recommendations were to be filed within twenty days.  Petitioner has filed objections to the Findings and Recommendations.

      In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this Court has conducted a *de novo* review of this case.  Having carefully reviewed the entire file, with particular attention to those portions relevant or pertinent to the objections raised, the Court finds the Findings and Recommendations to be supported by the record and by proper analysis.

      White raises two objections to the Findings and Recommendations.  First, White asserts that the California "timeliness rule" is not firmly established or consistently applied and he is

---

[1] Rich Subia, Warden, Mule Creek State Prison, substituted for Roseanne Campbell, Acting Warden, Mule Creek State Prison.  Fed. R. Civ. P. 17(d).

entitled to statutory tolling. Second, White argues that he is entitled to equitable tolling through October 6, 2005, the date that the Ninth Circuit handed down its decision in *Bonner v. Carey*, 425 F.3d 1145 (9th Cir. 2005). Neither objection is well taken.

His first objection is foreclosed by *Pace v. DiGulielmo*, 544 U.S. 408, 414 (2005). *Pace*, addressing what had been intimated in *Carey v. Saffold*, 536 U.S. 214 (2002),[2] specifically held "[w]hen a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." In *Bonner*, the Ninth Circuit recognized that *Pace* implicitly overruled the post-remand determination in *Saffold v. Carey*, 312 F.3d 1031, 1035 (9th Cir. 2002) (*Saffold II*), that the initial five-year delay in filing the petition in the lower state court was irrelevant to whether the petition was properly filed under AEDPA, stating "it is clear that the five-year delay in *Carey* was relevant to our analysis." The California Courts having held that the petitions filed in those courts were untimely under California law, "§ 2244(d)(2) does not allow for tolling." *Bonner*, 425 F.3d at 1149. The Magistrate Judge was correct on this point.[3]

White did not raise his second objection, that he is entitled to equitable tolling, in his opposition to the motion to dismiss. Although normally the Court will not address issues raised for the first time in the objections to Findings and Recommendations, the Court has considered this objection and finds it to be without merit.[4]

White relies by analogy on the recent decision of the Ninth Circuit in *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008). In *Harris* the Ninth Circuit, noting that *Pace* overturned existing Ninth Circuit precedent that an untimely Washington State post-conviction petition was properly filed for purposes of tolling the limitation period, *Dictado v. Ducharme*, 244 F.3d 724, 727–28 (9th Cir. 2001), held that, because he relied on existing controlling precedent, Harris was entitled

---

[2] Reversing and remanding *Saffold v. Newland*, 250 F.3d 1262 (9th Cir. 2000) (*Saffold I*).

[3] White's reliance on *King v. Lamarque*, 464 F.3d 963 (9th Cir. 2006), and *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003), is misplaced. *King* and *Bennett* are inapposite as they dealt with the "independent state law grounds" doctrine, not whether a petition was "properly filed" in the state court issue presented in this case, an entirely separate and distinct concept.

[4] The case relied on by White, *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008), was decided after the matter was submitted for decision and just 20 days before the Magistrate Judge filed his Findings and Recommendations.

to equitable tolling. White argues that the rationale of *Harris* ought to be extended to this case. The Court disagrees. The question presented in *Harris* was: "whether we should strictly apply the Supreme Court's rule announced in *Pace* on a retroactive basis, or whether we should grant equitable tolling given Harris' reliance on our controlling precedent in *Dictado*." *Harris*, 515 F.3d at 1054.[5]

Harris filed three successive petitions for post-conviction review. The first, filed in February 2001, 267 days after his conviction became final, was ultimately denied by the Washington Supreme Court February 4, 2004. The second petition was filed 29 days later on March 4, 2004, and was held to be untimely, as was his third filed October 11, 2004, ultimately held to be untimely by the Washington Supreme Court on June 1, 2005. Harris filed his habeas petition in the federal court on May 11, 2005. Under *Dictado* the time his untimely petitions were pending before the Washington courts would be tolled, under *Pace*, that time was not.[6] Consequently, if time were computed under *Dictado*, the petition was timely; if computed under *Pace*, it was not. Thus, the panel, in reversing and remanding, held "[e]quitable principles dictate that we toll AEDPA's statute of limitations in the rare case where a petitioner relies on our legally erroneous holding in determining when to file a federal habeas petition." *Harris*, 515 F.3d at 1057.

The facts in this case differ materially. *Pace* was decided April 27, 2005, 106 days after White's conviction became final (January 11, 2005). *Bonner* was decided October 6, 2005. White did not file his first petition for post-conviction relief in the California courts until November 16, 2005, 203 days after *Pace* was decided and 41 days after *Bonner*. At the time *Bonner* was decided, White still had 107 days, until January 12, 2006, to file his petition in the federal courts, even if no part of the one-year limitation period were tolled; and 213 days, until April 28, 2006, if the time between the date his conviction became final and the date *Pace* was decided were tolled under *Harris*. Thus, White could have filed a protective petition for relief

---

[5] White has not identified the specific controlling decision that he relied on in delaying filing his federal habeas petition. The Court assumes that it was the post-remand *Saffold II* decision implicitly overruled by *Pace*.

[6] The panel noted that Harris' petition became time-barred the moment *Pace* was decided. *Harris*, 515 F3d at 1056.

ORDER
*White v. Subia*, 2:06-cv-02840-JKS-EFB                      3

under § 2254 and requested this Court to hold the petition in abeyance pending exhaustion of his claims in the state courts, preserving his claims. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005).

The Court is not unmindful of the fact that in *Harris* the Ninth Circuit did not find the fact that the petitioner could file a protective petition dispositive. *Harris*, 515 F.3d at 1055.

> The fact that Harris *could* have filed a timely federal habeas petition at a certain point in time is not dispositive. The critical fact here is that Harris relied in good faith on then-binding circuit precedent in making his tactical decision to delay filing a federal habeas petition. Harris' failure to file a timely petition is not the result of oversight, miscalculation or negligence on his part, all of which would preclude the application of equitable tolling. (Citation omitted). Harris was undoubtedly aware of when AEDPA's statute of limitations would expire under our rule in *Dictado*. Harris presumably chose his tactical strategy precisely *because* he believed that, under *Dictado,* he could pursue relief in state courts without jeopardizing his ability to file a federal habeas petition. (Emphasis in the original)

The situation is markedly different in this case. *Pace* made clear that a petition is not "properly filed" in the state court (1) when untimely under state law and (2) the fact that state law provides for exceptions to its timeliness rule does not prevent a late application from being untimely. *Pace*, 544 U.S. at 413–14. As noted in *Bonner*, these holdings implicitly overruled *Saffold II*. At the very least, at the time it was decided, *Pace* cast serious doubts on the continued viability of *Saffold II* and that continued reliance on that decision was questionable. While White was undoubtably aware of *Saffold II*, *Pace* put White on notice that continued reliance on *Saffold II* was more likely than not misplaced. The fact that the Ninth Circuit did not "officially" recognize *Saffold II* was overruled until it handed down its decision in *Bonner* does not assist White.[7] Unlike *Harris*, under the facts and circumstances of this case, the Court cannot presume that White chose his tactical strategy based upon a good faith reliance on *Saffold II*. White waited 13 months after the California Supreme Court affirmed his conviction before

---

[7] In this case the change in the controlling law was the result of a decision by the Supreme Court construing § 2244(d)(2). "[W]hen [the Supreme] Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313 n.12 (1994). *See also Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 90 (1993) ("[W]e hold that this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision.").

filing his first habeas petition in the state courts, which was denied as untimely on January 6, 2006.  White did not at any time file a protective federal habeas petition, notwithstanding that at least colorable grounds existed to hold a petition in abeyance.  *See Pace*, 544 U.S. at 416 ("petitioner's reasonable confusion about whether a state court filing would be timely will ordinarily constitute 'good cause' for him to file in federal court").

The Court is also not unmindful of the fact that the Ninth Circuit in *Bonner* remanded the matter to the district court to address the issue of whether Bonner was entitled to equitable tolling.  Again, the facts materially differ in this case.  Bonner filed his petitions in both the state courts and the federal court before *Pace* was decided, not, as here, after.  Under those facts, *Harris* could apply, and Bonner may be entitled to equitable tolling.  Like Harris, Bonner's petition became untimely the moment *Pace* was decided.  On January 6, 2006, the date his first state court habeas petition was denied as untimely, White was presumably aware of the *Bonner* decision that an untimely state court filing did not toll the running of the one-year limitation period.  Although the *Harris* rationale might possibly apply to the first filing and toll the running of White's time, excluding those 52 days; unquestionably the time starting running again on January 7, 2006.  On that date, assuming that the time was tolled until *Pace* was decided, 203 days had lapsed, leaving White 162 days within which to file a federal habeas petition.  White filed his petition in this Court on December 14, 2006, 341 days later.[8]  Thus, at best, giving White the benefit of all periods during which the time may have been equitably tolled, the petition in this Court was filed 179 days late.

Even if the Court were to accept White's argument that the limitation period was tolled until *Bonner* was decided, October 6, 2005, White cannot prevail.  In that situation, without further tolling, White's time to file a federal habeas petition expired October 7, 2006, 68 days before he filed his petition.  White does not argue that any of the time after October 6, 2005, was tolled, other than as set forth in his first objection, which was foreclosed by *Bonner*, if not earlier by *Pace*.[9]

---

[8] White incorrectly states the filing date was November 16, 2005.

[9] The Court notes in passing that White attempts to tie *Harris* to the *King/Bennett* holdings *vis-a-*
(continued...)

Accordingly, IT IS HEREBY ORDERED THAT:

1.      The Findings and Recommendations filed February 19, 2008, as supplemented herein, are adopted;

2.      Respondent's Motion to Dismiss at Docket No. 10 is GRANTED;

3.      Petitioner's application for a writ of habeas corpus is DISMISSED; and

4.      The Clerk of the Court to enter final judgment accordingly.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Dated:  May 30, 2008.

                  s/ James K. Singleton, Jr.
                  JAMES K. SINGLETON, JR.
                  United States District Judge

---

[9](...continued)
*vis* the inconsistent application of the California timeliness rule under *In re Robbins*, 18 Cal.4th 770 (1998), and *In re Clark*, 5 Cal.4th 750 (1993).  White incorrectly suggests that *Harris* was premised upon the basis that, prior to *Pace*, Harris was entitled to rely on the previous Ninth Circuit rule that permitted statutory tolling regardless of a state court finding that the petition was untimely under *Robbins* and *Clark*.  *Harris*, however, arose out of a Washington, not California, conviction.  The prior Ninth Circuit holding addressed in *Harris*, *Dictado*, concerned Washington law, not *Robbins*/*Clark*.